UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CAROLYN HERZ SRIVASTAVA, PH.D.,   )
   )
                Plaintiff,   )
   )
vs.   )   Cause no.
   )
MARIAN HERZ, RETIREMENT LIVING, INC.,   )
DONAHOE IRVIN PC, DAVID F. HAMILTON,   )
GERALD ZORE, RICHARD SCHREINER, R.   )
HORTON FRANK III, BLAKEFORD AT GREEN   )
HILLS CORPORATION, CUMBERLAND   )
TRUST AND INVESTMENT COMPANY, ERIC   )
HOLDER, and DONALD HARRIS,   )
   )
                Defendants.   )

## COMPLAINT AND JURY DEMAND

1. Plaintiff brings a complaint against defendants for a pattern of racketeering that affects inter-state commerce and that, in defendants' pursuit of monetary gain, has deprived plaintiff of money and other property. Pursuant to *Fed.R.Civ.P.* 38(b), plaintiff demands a jury trial.

### I. JURISDICTION AND VENUE

2. This action arises under a federal statute, specifically Title 9 of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. §§ 1961-1968 ("RICO"); *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); 42 U.S.C. § 1983; and state torts. Jurisdiction of federal district court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367; and 18 U.S.C. § 1964; and there are federal government defendants.

3. Venue is proper in the Middle District of Tennessee, Nashville Division pursuant to 28 U.S.C. § 123 (b)(1); 28 U.S.C. § 1391 (b)(2) and (3); and 18 U.S.C. § 1965 (a) and (b), because most defen-dants transact their affairs in this district; some defendants reside in this district; and a substantial part of

the events giving rise to the claims stated have occurred in this district, mainly in Davidson County. Other defendants are joined as necessary for adjudication of the claims, pursuant to *Fed.R.Civ.P.* 19.

## II. PARTIES

4. a. Plaintiff Carolyn Herz Srivastava, Ph.D. is an unemployed single Jewish citizen of Marion County, Indiana,[1] where she has resided from 1985 through the date of filing this complaint. I (plaintiff) have been unmarried continuously from July 2, 1993 up to the present. I was previously married to a Hindu originally from India, and who is not a physician and obviously not a rabbi.

b. Because defendants have persistently, over a period of many years, perpetrated a pattern of identity theft against me, I have attached true and accurate photographs of myself, plaintiff Carolyn H. Srivastava, along with a true and accurate copy of my most recent passport,[2] hereto as Exhibit 1. I am about 5 feet 2 inches tall, of slight build, weighing 105-110 pounds, with unusually small bones.

5. Defendant Marian Herz is my (plaintiff's) younger sister. She has, throughout her life, been a spendthrift, who is always in debt. She currently resides in Wilson County, Tennessee.

6. Defendant Retirement Living, Inc. d/b/a Marquette Manor is an Indiana nonprofit corporation that operates a retirement facility offering different levels of care. My (plaintiff's) mother was sent to Marquette Manor Healthcare Center, a skilled nursing facility, for rehabilitation after a hospital stay.

7. Defendant Donahoe Irvin PC is an Indianapolis law firm whose two principals and only attorneys, Peter H. Donahoe and Alan J. Irvin, have purported to represent my (plaintiff's) parents Julian and Isabel Herz in preparing their wills and other related matters affecting my future finances, and defendant Marian Herz in litigation.

---

[1] All references to Marion County in this complaint are to Marion County, Indiana, which includes the city of Indianapolis.
[2] I have redacted information that could be used to commit further identity theft against me. I am aware that the passport has expired and is therefore not valid for travel, or for voting in Indiana. I have not renewed it because I am considering petitioning a court to change my name back to Carolyn Herz.

8. Defendant David F. Hamilton ("Hamilton"), was a judge of the U.S. District Court for the Southern District of Indiana (i.e. not Tennessee) from October 1994 through November 2009. Currently, he is a circuit judge on the U.S. Court of Appeals for the Seventh Circuit, which has jurisdiction over appeals taken from the U.S. district courts of Illinois, Indiana, and Wisconsin (i.e. not Tennessee). As a judge, Hamilton has manifested an attitude that the federal courts are his personal property, exhibiting a pathological obsession with squelching *pro se* litigants, and, in collaboration with his Methodist minister father Richard "Dick" Hamilton, with promoting annihilation of Jews. David F. Hamilton is a domestic terrorist masquerading as a judge. Hamilton is being sued in his individual capacity only for actions taken outside the scope of his employment.

9. Defendant Gerald Zore ("Zore") has been a judge of the Marion County, Indiana Superior Court Civil Division since 1974. He held the position of Presiding Judge of Marion Superior Court from January 2007 – January 2009, and is currently a member of the court Executive Committee and Probate judge. He has abused his position to mix up electronic court records from different cases and even different jurisdictions, and to create records of alleged proceedings that never took place, such that no Marion Superior Court record can be considered reliable. Zore has admitted to ruling in response to bribes.

10. Defendant Richard Schreiner ("Schreiner") was, for more than twenty years, Chairman of the Department of Pediatrics of Indiana University School of Medicine ("IUSM") and my (plaintiff's) former supervisor. He has exhibited a hatred of women and Jews, and especially Jewish women. He was removed from the chairmanship in 2009, but remains on the IUSM faculty.

11. Defendant R. Horton Frank III ("Frank") is a Davidson County, Tennessee attorney who practices in the area of probate and estate planning law. He is frequently appointed as a *guardian ad litem* in conservatorship cases, and possibly also as conservator.

12. Defendant Blakeford at Green Hills Corporation (hereinafter, "Blakeford") operates a retirement complex comprising independent living apartments, assisted living suites, a skilled nursing facility called Woodcrest at the Blakeford, and locked "Memory Care Center," in Davidson County, Tennessee.

13. Defendant Cumberland Trust and Investment Company ("Cumberland Trust") is a financial institution located in Davidson County, which has sought to take control of my (plaintiff's) assets.

14. Defendant Eric Holder ("Holder") holds the position of Attorney General of the United States. In that position, one of his duties is to supervise federal law enforcement, to take law enforcement actions based on real evidence of commission of crimes, not on innuendo, people's thoughts, or backstabbing gossip. Another of his duties is to provide legal representation for United States government officials sued in their official capacities. Holder has manifested an antipathy toward Caucasians in general and Jews in particular. Currently, he uses his position to prevent me from worshipping in my religion and to encourage the commission of hate crimes against me because I am Jewish. He also seeks to annihilate Muslims and Jews with unconstitutional "preemptive prosecutions," bringing charges against those whom he fantasizes in his mind might commit a crime, entrapping them into saying something that sounds suspicious. Based on his actions in my litigation, Holder is unqualified for his job.

15. Defendant Donald Harris is a Tennessee senior judge who resides in Williamson County. He is being sued in his individual capacity only for actions taken in excess of jurisdiction.

### III. ALLEGATIONS IN SUPPORT OF COMPLAINT

#### A. General background

16. Defendants and others have organized a criminal enterprise, to which I have referred as the "Syndicate," through a pattern of anti-social behavior, as follows:

a) They manifest an obsession with sex, using it as barter, i.e. committing the Indiana felonies of promoting prostitution and criminal deviate conduct. They seek to conceal this disgusting activity by using a code in which common words are given sexual meanings. Thus, those who exchange oral

sex for tangible benefits are termed "friends" who "like" each other, "talk" to each other, and "want" each other. They characterize themselves and their actions as "good." The sexual barter begins with the individual holding the position of power asking, "What can I do for you?" Another introductory remark, particularly between women, is, "I like your ….(dress, shoes, etc.)." Oral copulation in exchange for material favors, i.e. prostitution or *quid pro quo* sexual harassment, follows.

b) They are extremely vindictive, conferring on themselves permission to viciously retaliate for any real or perceived slight. They also regularly fly into rages of extreme, uncontrolled jealousy, seeking to destroy anyone who obtains a benefit that they do not also obtain. In their small minds, life is a zero sum competition: anyone else's gain is by definition, their loss.

c) They disrupt the functioning of organizations of all types: businesses, schools, nonprofits, government, by inducing office staff to falsify organization records, to forge officers' signatures to documents, and to help them steal money from the organization's treasury.

d) They maintain files of detailed personal information on everyone with whom they inter-acts for use as blackmail.

e) They seek to portray themselves as upstanding citizens, members of the intellectual, cul-tural, and religious elite, even as they work behind the scenes to manipulate gullible individuals to do their "dirty work" for them, with intent that others will take the punishment. They simultaneously ex-cuse their own misconduct with absurd, twisted rationalizations.

f) They abuse controlled substances and have induced many other individuals to do the same, by both causing them extreme stress and overtly offering them the drugs. They also seek to force those who oppose them to unnecessarily consume very dangerous psychotropic pharmaceuticals.

g) They are narcissists who claim special entitlement to whatever they want merely because they want it.

h) They obtain positions of power in government to disguise their plainly criminal activity as alleged government action. For example, they use phony "law enforcement" excuses to unlawfully monitor innocent citizens' telephone calls, email communications, comings and goings, and visitors, to interfere in and disrupt innocent people's lives.

17. Female Syndicate members, including defendant Marian Herz, have participated in Syndicate activities by stealing my identity to perpetrate acts of misconduct in my name. The Syndicate has sought to punish me for their and others' malfeasance, because, as a single Jewish woman, I am an easy target.

18. The Syndicate apparently started in Indiana, but has spread to many if not all other states. I first encountered the Syndicate when I was employed at IUSM in various academic positions from 1987 through June 1996, the last three years of that time as a tenure-track faculty member in defendant Schreiner's department. My principal academic activity was biomedical research.

19. Defendant Schreiner established in his department a misogynistic requirement that female faculty must perform oral sex on him as payment for receipt of the salary and benefits mandated by our university contracts, what is termed *quid pro quo* sexual harassment in employment discrimination law and promoting prostitution in Indiana criminal law. I did not comply with Schreiner's requirement of sex for salary and began expressing opposition to it.

20. To discredit my complaints, Schreiner, in collaboration with fellow anti-Semite and misogynist David F. Hamilton, who got himself a federal judicial appointment to destroy me due to my independent-mindedness, began a pattern of vindictive retaliation. First, they fabricated a letter allegedly signed by a psychiatrist, purporting to diagnose me with mental illnesses that do not afflict me. This would serve an additional self-serving purpose of stereotyping all Jewish women as crazy.

21. They then spread vicious slander and libel throughout the academic community and beyond, fabricating vicious lies that I am disruptive and that I engage in research misconduct. Richard Schreiner and David F. Hamilton thereby destroyed my biomedical research career, for which I had spent many

years in education and training. Further, they have vindictively blacklisted me from all employment from 1996 up to the present.

22. Hamilton and Schreiner have also used their vicious lies to prevent my admission to law school: they abuse their official positions to wiretap my telephone and monitor my emails to learn to what law schools I have applied, and they then move in with their unsolicited slander and libel.

23. Thus, I have almost no income and no chance of obtaining employment; I live on my assets, which are not likely to last for the remainder of my life. I therefore need my inheritance from my parents to pay my living expenses. Richard Schreiner and David F. Hamilton, in contrast, luxuriate in soft, easy tenured positions, with guaranteed taxpayer-funded income for the rest of their lives.

24. David F. Hamilton and Richard Schreiner have encouraged my neighbors to commit hate crimes against me, viciously destroying my property, because I am a vulnerable Jewish woman. They have also encouraged police to refrain from taking my complaints seriously.

25. Defendant Gerald Zore subsequently saw an opportunity to unlawfully enrich himself at my expense, and so he joined the Schreiner-Hamilton lying machine. In 2009, Eric Holder joined.

**B. Syndicate activities relating to my family**

26. The claims in this particular complaint stem from defendants' efforts to turn my parents against me using threats, intimidation, and identity thieves to impersonate me, with intent to divert all of my parents' money, including my inheritance, into Syndicate members' pockets, and into funding Syndicate activities.

27. My parents had moved to Indianapolis in 1986 to be near my son, their only grandchild.

28. In December 1995 my parents, on their own initiative, established two similar trusts, one with my mother as settlor and trustee and the other with my father as settlor and my mother as trustee. The trusts treated Marian Herz and me (plaintiff) essentially equally as beneficiaries. It has always been

my parents' practice to treat us equally. My mother subsequently gave me copies of the trust agreements. Prior to then, I did not know about them.

29. My mother also, around that time, voluntarily appointed me (plaintiff) as her health care representative.

30. In 1995-1996, my parents made prepaid arrangements with a Jewish Indianapolis funeral home for funeral and burial. They also purchased two cemetery plots, which I currently own.

31. Subsequently, Marian Herz and Donahoe Irvin attorneys, in collaboration with Hamilton and Zore, hatched a plan to grab control of my parents' assets and to hasten my parents' deaths in order to obtain those assets, using false allegations that I am allegedly crazy based on the bizarre behavior of identity thieves whom they recruited, along with their defamatory letter. They also coerced my parents into changing their expressed plans for disposition of their remains from burial to the less expensive cremation. In order to accomplish this, in 2003 Marian Herz, with the intimidation power of Hamilton and Zore, grabbed power of attorney over my parents' medical and financial affairs.

32. In June 2006 Marian forcibly moved my parents from their independent condominium in Indianapolis to a retirement facility in Tacoma, Washington, about 45 minutes' drive from her home at the time. My mother passed away in their health care center.

33. Marian moved my father from Tacoma to the Cumberland at Green Hills, an assisted living facility located just across the street from the Blakeford, in January 2009, due to her own job-related relocation.

34. I (plaintiff) visited my father at the Cumberland at Green Hills in April 2009 and May 2009 and was favorably impressed with the facility. My father, then 91 years old, seemed to be settling in, despite the stress of having been moved around the country like a piece of furniture. The Cumberland does not accept Medicaid and is quite luxurious in appearance and amenities, so it might reasonably be concluded that residents there are financially well off.

35. Due to the proximity of the Blakeford and the Cumberland at Green Hills, it is likely that workers frequently move from one facility to the other.

36. In late October 2009 I sent Marian Herz an email message expressing a desire to invite my father to my home for Thanksgiving. In response, in collaboration with Schreiner, Hamilton, and Zore, she instituted an *ex parte* conservatorship proceeding in order to totally control my father's life, and to effect his demise as quickly as possible, engineering an "accidental" fall in the early morning hours of November 10, 2009.

37. Because the Cumberland at Green Hills does not have a skilled nursing facility, my father was sent to the Blakeford's Woodcrest health care center for rehabilitation after a short hospital stay for the fall. He was supposed to return to the Cumberland at Green Hills within a few weeks. Instead, he disappeared.

38. Disreputable retirement facilities try to convert their patients into money machines by using addictive psychotropic drugs to turn them into helpless vegetables who generate significant revenue in skilled nursing facilities while requiring minimal services. Medical facilities are supposed to keep scrupulously accurate and detailed records of receipt and dispensing of controlled substances, but these requirements can easily be evaded through various schemes.

39. Another moneymaking scheme for unscrupulous retirement facilities is first to pressure the affluent elderly into opting for disposition of their remains by cremation. They then engineer an "accidental" fall or other serious injury, causing their victims to be sent to the hospital. The victim is subsequently returned to their facility, to their tightly locked "Memory Care" Center, to which entry and egress is limited. Meanwhile, relatives are told that the victim died and was immediately sent to be cremated. A death certificate is created with a forged physician's signature, or, alternatively, the real signature of a malingering physician. The relatives are presented with amorphous ashes.

40. The next step is to falsely inform the probate court that the victim was abandoned by relatives (because they think he/she is deceased), and to make the victim a ward of the state, with someone like defendant Frank as his/her paid representative, dispensing money to the retirement facility. Meanwhile, the retirement facility keeps the victim locked up and isolated, taking his/her funds for extra care that he/she neither needs nor receives, until either the funds run out, in which case he/she is murdered with an overdose of a toxic controlled substance, or the victim dies naturally.

41. Marian Herz, Peter Donahoe, Alan J. Irvin, David F. Hamilton, R. Horton Frank III, Richard Schreiner, Eric Holder, and Donald Harris are not good people. They cannot be trusted. Retirement Living, Blakeford at Green Hills Corporation, and Cumberland Trust and Investment Company are not good organizations. They cannot be trusted.

**D. Previous litigation**

42. In order to obtain relief for injuries inflicted by the Syndicate, I have pursued litigation in state and federal court. I have represented myself in every case to which I have been a party, initially because Syndicate members had intimidated attorneys away from representing me, but subsequently because I enjoy studying and arguing law, as well as managing my own cases and devising my own litigation strategies.

43. For each civil case that I initiated, I paid the applicable filing/appellate docketing fee out of my own personal funds and complied with the other requirements for initiating an action/appeal. In so doing, I acquired a property interest in a fair hearing of my claims pursuant to the relevant statutes, court rules, and judicial opinions.

44. I spent many hours researching the relevant procedural and substantive law and carefully drafting my complaints and briefs. I personally prepared all of the paperwork for service of process on the defendants in my cases.

45. In order to discredit my complaints about government corruption and to perpetuate their self-serving stereotype of Jewish women as incompetent crazies, Syndicate members who have been defendants in my cases have sabotaged all of my cases by recruiting female identity thieves to submit forged documents to courts in my name in place of my real filings, what constitutes the crime of unauthorized practice of law. Identity thieves also appeared in *ex parte* trials, hearings, and secret meetings in judges' chambers to which I was not invited, falsely representing that they are I. To accomplish this, defendants Hamilton and Zore have instructed court clerks to notify them as soon as I file a document, so that they can immediately submit in my name and on my behalf to the judge, *ex parte*, a forgery containing bizarre, nonsensical, often pornographic ramblings.

46. Defendants' secret forged documents are marked "Received" because they are not filed openly with the Clerk and do not appear in the public docket. Recently, defendants have pressured court clerks to mark my submissions "Received" as well, in order to confuse my legitimate filings with their poor quality forgeries.

47. Identity thieves have also been permitted to parasitize my filing fees, to secretly submit parallel, really frivolous complaints to courts in my name and without my knowledge. In order to steal my money for themselves, defendants have used the identity thieves' frivolous and meritless "lawsuits" brought in my name to claim for themselves alleged "attorney fees" from me based on the nonsense submitted by the identity thieves. David F. Hamilton, Richard Schreiner, and Gerald Zore have employed this pretext to abuse their government positions by diverting more than $70,000.00 of my personal money into their own pockets. They will likely try to do the same in this action; it seems that defendant Cumberland Trust is eager to profit from the ongoing scam.

48. Because of the defendants' persistent fraud and forgeries, along with preventing me from engaging in discovery to obtain evidence generally and intimidating witnesses from testifying, I have never had a full and fair opportunity to litigate any of the cases to which I was a party. I have had to file

responses to motions for summary judgment with only the very limited evidence already in my possession; no depositions, requests for documents, or answers to my interrogatories permitted.

49. As part of the litigation, I have filed numerous affidavits and verified motions in legal proceedings in federal courts continuing up to the present, and have testified orally. Thus, I have been a witness, informant, and party in federal official proceedings.

50. During the periods December 31, 2005 through March 31, 2006 and December 30, 2009 up to the present, I have, through litigation documents, stated claims of racketeering offenses to federal law enforcement officers: United States attorneys and the Attorney General of the United States. Thus, I provided truthful information about possible commission of crimes to law enforcement officers.

### E. Other matters

51. So-called "judicial immunity" was abolished by the Federal Courts improvement Act of 1996, Public Law 104-317. Moreover, Article III of the *Constitution of the United States* grants no immunity to judges from suit under the U.S. laws and Constitution.

52. The case *Rotella v. Wood*, 528 U.S. 549 (2000), incorrectly asserts that civil actions brought pursuant to the RICO statutes have a four year statute of limitations that begins to run with the first predicate offense. The decision ignores the plain wording of 18 U.S.C. § 1961 (5), which requires at least two predicate offenses to form a pattern of racketeering activity and which specifically provides for a maximum of **ten** years between predicate offenses, and, in combination with the Clayton Act on which it was modeled, a statute of limitations of four years after the **last** predicate offense. Thus, *Rotella* was wrongly decided and should not be used as controlling authority.

53. In 2008, the latest year for which data are available, 70% of hate crimes in the United States were committed against Jews.

### IV. STATEMENT OF LEGAL CLAIM

54. I (plaintiff Carolyn Herz Srivastava) support the following claims by reference to the previous paragraphs of this complaint:

55. **Count I**. Racketeering: Defendants have used money acquired from a pattern of racketeering activity to maintain an interest in an enterprise that engages in interstate commerce. They have conducted the enterprise's affairs through a pattern of racketeering activity designed to deprive plaintiff of her own money and other property, as well as her rightful inheritance from her parents, to divert the money to themselves, and to deprive plaintiff of her property interest in obtaining relief in court, and to injure her in her business by using court records to spread false libelous allegations, activities prohibited by 18 U.S.C. §1962 (c) and (d). Predicate offenses include the following:

a) Defendants David F. Hamilton, Richard Schreiner, and Gerald Zore, having devised a scheme to defraud me out of my good name and reputation have, for more than ten years, been parasitizing my email addresses to send forged bizarre and threatening emails purporting to be from me, but which are really drafted by them.

b) Retaliation against party, witness, 18 U.S.C. § 1513: In April 2003 I filed an amended complaint alleging federal racketeering offenses against Zore and some of defendants' collaborators, U.S. District Court for the Southern District of Indiana case no. 1:03-cv-0421 JDT-WTL. In response, in June-July 2003 defendants Richard Schreiner, Gerald Zore, and David F. Hamilton threatened to cause bodily injury to me through the following: they pressured my parents to read stacks of documents containing bizarre, crazed ramblings, which they falsely alleged were drafted by me, inducing my mother to make an appointment for me to see a psychiatrist to force me to involuntarily consume dangerous controlled substances with injurious side effects.

c) Robbery (Ind. Code § 35-42-5-1): In approximately November 2003, Marian Herz and Donahoe Irvin attorneys, in collaboration with Hamilton and Zore, altered my parents' wills and trusts, and grabbed power of attorney over their medical and financial affairs to take assets intended for me and

designate them for Donahoe Irvin and Marian Herz, by putting my parents in fear of harm if they did not comply.

d) Wire fraud: During the period September 2004 through July 2006, defendant David F. Hamilton, having devised a scheme to defraud me of relief for meritorious legal claims and of employment for which I am qualified, published and maintained on the general Internet (i.e. outside of the federal courts' official PACER system) in interstate commerce, for the purpose of executing his scheme, an alleged "judicial opinion" containing libelous falsehoods that I allegedly file frivolous lawsuits and that I am allegedly mentally ill. The opinion came up as one of the first results in a Google search of my name.

e) Kidnapping: On November 5, 2005 Marian Herz, Gerald Zore, David F. Hamilton, Donahoe Irvin attorneys, and Retirement Living forcibly moved my mother from the hospital to Marquette Manor against her wishes, with intent to take some of my inheritance to pay for care that was not given.

f) Dealing in controlled substances: During the period November 5, 2005 through December 21, 2005, defendants Retirement Living, Marian, Herz, Richard Schreiner, David F. Hamilton, and Donahoe Irvin collaborated to overdose (at least five times the prescribed dose) my mother with morphine, causing serious bodily injury, including physical and psychological addiction, aspiration pneumonia, mental confusion, reduced ability to talk, and loss of appetite and ability to eat, leading to potential starvation. The intent was to physically and mentally incapacitate my mother so that Marian Herz and Donahoe Irvin attorneys would have free access to her money, and so that she would have had to remain at Marquette Manor as a paying customer for Retirement Living until she died, rather than being rehabilitated so that she could return home.

g) Threat of kidnapping: On December 20, 2005 defendant Retirement Living threatened to have their security remove me from the premises, to prevent me from visiting with my mother and to prevent me from witnessing their mistreatment of my mother.

h) Wire fraud: On the evening of December 20, 2005 defendant Marian Herz, having devised a scheme to defraud me out of my right to interact with my ailing mother, transmitted sounds in interstate commerce for the purpose of executing the scheme via telephone wire: She threatened to obtain a restraining order against me for advocating for my mother's welfare.

i) Retaliation against party, witness, 18 U.S.C. § 1513: In retaliation for affidavits filed as part of U.S. District Court for the Southern District of Indiana case no. 1:06-cv-0131-LJM-VSS, in which Marian Herz, Peter Donahoe, David F. Hamilton, Retirement Living, and Richard Schreiner were named as defendants, Marian Herz, Peter Donahoe, David F. Hamilton, Retirement Living, and Richard Schreiner collaborated to coerce my parents into signing alleged amended trusts drafted by defendants on February 21, 2006 requiring that all of their legal expenses in any court action be paid out of my inheritance, thereby injuring me in my tangible property.

j) Robbery (Ind. Code § 35-42-5-1): During the period February 18-21, 2006, Marian Herz and Donahoe Irvin attorneys, in collaboration with David F. Hamilton, intentionally altered my parents' wills and trusts to take assets intended for me and designate them for Donahoe Irvin, Hamilton, Zore, and Marian Herz, by putting my parents in fear of harm if they did not sign the documents. My mother was not mentally competent to read and understand the documents at that time.

k) Kidnapping: In June 2006 defendant Marian Herz intentionally forcibly moved my parents from Indianapolis to Tacoma, Washington against their will, in order to exert total control over them and steal their money and my inheritance.

l) Murder: In October 2007 Marian Herz intentionally instigated a physician to administer to my mother an overdose of either a narcotic painkiller, a sedative, the antipsychotic Seroquel, or the powerful anesthetic propofol, with intent to cause her death, and it did cause her death.

m) Kidnapping: During the period November 2008 through January 2009, defendants Blakeford, David F. Hamilton, and Marian Herz conspired to forcibly move my father from Tacoma, Washington to Nashville, Tennessee, where they would be able to control him and his assets.

n) Mail fraud: In October-November 2009 defendant Marian Herz, having devised a scheme to defraud me out of my inheritance, for the purpose of executing that scheme, sent through the U.S. mail as part of Davidson County probate case number 09P-1680 false allegations that I allegedly file frivolous lawsuits, when it is she who has filed frivolous lawsuits.

o) Extortion (Tennessee Code § 34-14-112): Defendants Blakeford, R. Horton Frank III, and Marian Herz used coercion on Davidson County Probate Court Judge David Randall Kennedy in November 2009 to induce him to unnecessarily appoint Marian as conservator for my father, to prevent me from hosting him in my home and more generally from interacting with him at all.

p) Kidnapping: Agents of defendant Blakeford, in collaboration with R. Horton Frank III, David F. Hamilton, Gerald Zore, and Marian Herz, intentionally pulled my father out of bed in the early morning hours of November 10, 2009 and pushed him down to break his hip, to forcibly move him to the hospital and then to the Blakeford for rehabilitation, with intent to enrich themselves with money from him and from Medicare.

q) Mail fraud (18 U.S.C. § 1341), or alternatively murder: Defendants Blakeford, Frank, Hamilton, and Marian Herz, having devised a scheme for obtaining my father's money by false pretenses, for the purpose of executing that scheme, knowingly forged a physician's signature to a death certificate falsely alleging that my father had passed away and sent it to me (plaintiff) by Postal Service on or about December 14, 2009; or, alternatively, they intentionally killed him with an overdose of a dangerous controlled substance.

r) Dealing in controlled substance: During the period April 2009 up to at least December 2009, defendants Marian Herz and R. Horton Frank, in collaboration with Zore and Hamilton, have

forced my father to unnecessarily take the dangerous psychotropic drug Seroquel. Seroquel has been approved by the federal Food and Drug Administration for treatment of schizophrenia and bipolar disorder, neither of which afflicts my father. AstraZeneca, the manufacturer, has included the following warning prominently in its advertising:

> "Elderly patients with dementia-related psychosis (having lost touch with reality due to confusion and memory loss) treated with this type of medicine are at an increased risk of death, compared to placebo (sugar pill). **SEROQUEL XR is not approved for treating these patients.**"

[emphasis added]. My father also never had dementia-related psychosis.

s) Retaliation against party, witness, 18 U.S.C. § 1513: From December 30, 2009 through July 12, 2010, as a witness and party to U.S. District Court for the Northern District of Indiana case number 2:10-cv-00053-PPS-PRC, I filed several affidavits containing my testimony, as well as numerous other documents. Defendants David F. Hamilton, Peter Donahoe, Gerald Zore, and Richard Schreiner, a U.S. attorney, and Marian Herz's domestic partner were defendants in that case. In retaliation, in collaboration with Donald Harris and Cumberland Trust, they have threatened to take my inheritance by instituting Davidson County Probate case number 10P-1127 on July 20, 2010.

t) Mail fraud: Having devised a scheme to defraud me of my inheritance, to execute that scheme, in a document entitled **Supplemental Response to Motion for Relief from Judgment**, filed by Marian on June 14, 2010 in Davidson County Circuit Court case no. 09P-1680, Marian has intentionally asserted both that Julian Herz is deceased and that he is currently alive and imprisoned in the Memory Care Center at the Blakeford at Green Hills in Nashville, Tennessee. It also falsely alleges that my father had an "accident" that led to his death in Wilson County, when he was residing in Davidson County. I received a service copy of the document via U.S. mail. Julian Herz is either deceased or living; he cannot be both simultaneously.

u) Tampering with witness, victim, 18 U.S.C. § 1512 (b): Through a letter and fraudulent "motion" dated April 16, 2010 and sent to me via U.S. mail, defendant Blakeford at Green Hills knowingly used intimidation and threatened me, with intent to induce me to withhold testimony and other documents in an official proceeding: U.S. District Court for the Middle District of Tennessee case no. 3:10-cv-00082.

v) Mail fraud, wire fraud: On or about April 9, 2010 defendants Eric Holder and David F. Hamilton, having devised a scheme to defraud me of my property interest in a fair hearing of my claims, in order to execute that scheme, knowingly and intentionally filed in U.S. District Court for the Middle District of Tennessee case number 3:10-cv-00082 documents designated as Exhibits 1, 3, and 4 attached to Docket # 40 containing false, extremely libelous allegations about me, and effected their electronic transmission through wires and sent copies to me through the U.S. mail  The documents purported to be judgments and orders drafted by other judges, but were really documents drafted by David F. Hamilton, to which he forged other judges' signatures.

w) Obstruction of justice, 18 U.S.C. § 1503: On or about April 9, 2010, defendants Eric Holder, Gerald Zore, and David F. Hamilton corruptly an/or by threatening communication, impeded the due administration of justice by influencing personnel of the Clerk's office of the U.S. District Court for the Middle District of Tennessee to enter a notation in the record of case number 3:10-cv-00082 the false information that Marion County, Indiana has a seventh circuit and that I allegedly sued it, when Marion County, Indiana has no seventh circuit.

x) Obstruction of justice, 18 U.S.C. § 1503: On or about April 14, 2010, defendants Eric Holder and David F. Hamilton corruptly an/or by threatening communication, impeded the due administration of justice by influencing personnel of the Clerk's office of the U.S. District Court for the Middle District of Tennessee to forge a judge's signature to an alleged unlawful order granting Motion to Sub-

stitute United States as Defendant that was really drafted by them in case number 3:10-cv-00082, and to enter that fraudulent alleged order into court records.

y) Obstruction of justice, 18 U.S.C. § 1503: On or about May 10, 2010 and May 19, 2010, defendants Eric Holder and David F. Hamilton corruptly an/or by threatening communication, impeded the due administration of justice by influencing personnel of the Clerk's office of the U.S. District Court for the Middle District of Tennessee to forge a judge's signature to documents purporting to be 1) a judgment in their favor and against me, 2) a denial of reconsideration of the fraudulent "judgment," respectively, that were really drafted by them in case number 3:10-cv-00082, and to enter the fraudulent alleged judgment and denial of reconsideration into court records.

z) Obstruction of justice, 18 U.S.C. § 1503: On or about June 14, 2010, defendants Eric Holder, Gerald Zore, Richard Schreiner, and David F. Hamilton corruptly and/or by threatening communication, impeded the due administration of justice by inducing the Clerk's office of the U.S. District Court for the Northern District of Indiana to forge a judge's signature to a document that purporting to be a judgment in their favor and against me that was really drafted by them in case number 2:10-cv-00053-PPS-PRC, and to enter that fraudulent alleged judgment into court records.

aa) Mail fraud: Defendants Marian Herz, David F. Hamilton, Gerald Zore, and Cumberland Trust, having devised a scheme to defraud me (plaintiff) out of my inheritance by charging exorbitant "management fees" and by inventing excuses to divert my money to themselves, to execute that scheme, sent through the mail on July 20, 2010 a document entitled "Petition to Appoint Trustee" containing false, extremely libelous allegations about me and seeking to designate Cumberland Trust as trustee based on documents that they knew to be fraudulent.

bb) Extortion: Defendants Marian Herz, David F. Hamilton, Gerald Zore, Blakeford, and Cumberland Trust, with intent to coerce me to file documents in court for which they would take advantage of me by substituting forgeries containing bizarre ramblings, which they would then use as justifi-

cation to steal my money, filed in Davidson County Probate Court and sent to me on a copy of "Petition to Appoint Trustee" and Summons, case number 10P-1127, ordering that if I did not reply within thirty days, the petition would be summarily granted. I received the summons and copy of the petition on July 22, 2010.

cc) Bribery: Cumberland Trust will give Donald Harris some of my inheritance as under-the-table payment for awarding control of my inheritance to Cumberland Trust.

56. **Count II**. Conspiracy to violate civil rights pursuant to 42 U.S.C. § 1983: During the period July 20, 2010 up to the present, defendant Donald Harris, as part of Davidson County case number 10P-1127, has met privately with Marian Herz, an identity thief impersonating me, R. Horton Frank III, and representatives of Cumberland Trust, to work out a secret deal to unlawfully appoint Cumberland Trust as trustee over an unlawful trust, thereby depriving me of my money without due process of law, in violation of the Fourteenth Amendment to the *Constitution of the United States*. The hearing set for September 20, 2010 is a sham, conducted solely for appearance's sake.

57. **Count III**. Abuse of process: On or about November 5, 2009 Marian Herz and R. Horton Frank III, in collaboration with Gerald Zore and Richard Schreiner, instituted a frivolous and unnecessary conservatorship proceeding against my father in Davidson County Probate Court, case number 09P-1680. They willfully committed improper acts in the proceeding: They did not serve my father with process; they did not have a representative for him to explain his rights and to appear on his behalf at the hearing; they included in the petition irrelevant libelous material about me; she coerced a physician who was not a mental health professional to purport to "diagnose" him with an imaginary mental illness; and she participated in an *ex parte* hearing in which an identity thief impersonated me without my knowledge or consent. their intent was not to help or protect my father, but rather they had the ulterior motives of 1) dissipating my inheritance so that I would not receive any of it; 2) causing my father's untimely

demise by isolating him from me and all of his relatives; 3) inflicting harmful "treatments" on him, which they did not want me to witness; 4) venting Marian's jealousy of me.

58. **Count IV**. Violation of constitutional rights pursuant to *Bivens*: From at least January 2010 up to the present, Eric Holder has maintained a policy of using his office to prevent me from worshipping in my religion because I am Jewish, in violation of the First Amendment to the *Constitution of the United States*.

## V. PRAYER FOR RELIEF

59. Based on the foregoing, I (plaintiff) respectfully request that the Court order the following relief:

60. That Blakeford and Marian Herz inform me in detail and under oath as to what happened to my father.

61. Enjoin defendant Marian Herz and Cumberland Trust and Investment Company from dissipating any funds from the trusts of my parents Isabel Herz and Julian Herz.

62. Order defendant Marian Herz to reimburse the trusts of my parents Isabel Herz and Julian Herz for any moneys from the trusts that she has expended on any legal proceedings.

63. Order defendants Marian Herz and R. Horton Frank III to reimburse me for my expenses incurred in responding to Davidson County Circuit Court cases 09P-1680 and 10P-1127.

64. Enjoin defendants David F. Hamilton, Gerald Zore, and Richard Schreiner from all direct and indirect contact with me, other than through an attorney of record as part of a legal proceeding.

65. That Blakeford refund treble the amount of all payments collected from Julian Herz for any time that he may have spent in the Blakeford Memory Care Center, including but not limited to payments for accommodations, meals, provider medical services, supplies, and pharmaceuticals administered.

66. That Retirement Living refund treble the amount of all payments collected from Isabel Herz for the time that she spent there, including but not limited to payments for accommodations, meals, provider medical services, supplies, and pharmaceuticals administered.

67. Enjoin defendant Donald Harris from awarding any of my inheritance to anyone, and from appointing any trustee to oversee any alleged Carolyn Srivastava trust.

68. Order the adoption of the Isabel Herz and Julian Herz 1995 trust agreements as the valid expressions of my parents' wishes.

69. Treble damages.

70. Compensatory and punitive damages.

71. Any other relief that the Court may deem proper.

## VI. AFFIRMATION OF PLAINTIFF

I, the plaintiff in the aforementioned cause, do affirm that I have read all of the statements contained in the complaint and that I believe them to be, to the best of my personal knowledge, true and correct.

Signed this *12th* day of *September*, 2010.

*Carolyn Srivastava*

Carolyn Herz Srivastava, Ph.D., Plaintiff
3105 Lehigh Court
Indianapolis, IN 46268
chsattysci@gmail.com
Tel. (317) 876-0421

22